UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br><br>Plaintiff )<br><br>v. )<br><br>TOTALENERGIES MARKETING )<br>PUERTO RICO CORPORATION, )<br><br>Defendant ) | Civ. No. 3:22-cv-1454 |

**CONSENT DECREE**

# TABLE OF CONTENTS

| | | |
|------|-----------------------------------|----|
| I. | INTRODUCTION | 1 |
| II. | JURISDICTION AND VENUE | 3 |
| III. | APPLICABILITY | 4 |
| IV. | OBJECTIVES | 5 |
| V. | DEFINITIONS | 5 |
| VI. | CIVIL PENALTY | 7 |
| VII. | COMPLIANCE MEASURES | 8 |
| VIII. | REPORTING REQUIREMENTS | 16 |
| IX. | STIPULATED PENALTIES | 20 |
| X. | FORCE MAJEURE | 23 |
| XI. | DISPUTE RESOLUTION | 25 |
| XII. | RECORD RETENTION AND ACCESS | 27 |
| XIII. | EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS | 29 |
| XIV. | COSTS | 30 |
| XV. | NOTICES | 31 |
| XVI. | RETENTION OF JURISDICTION | 32 |
| XVII. | MODIFICATION | 32 |
| XVIII. | TERMINATION | 33 |
| XIX. | PUBLIC PARTICIPATION | 33 |
| XX. | SIGNATORIES/SERVICE | 34 |
| XXI. | INTEGRATION | 34 |
| XXII. | 26 U.S.C. SECTION 162(f)(2)(A)(ii) IDENTIFICATION | 34 |
| XXIII. | FINAL JUDGMENT | 35 |

## I.    INTRODUCTION

WHEREAS, Plaintiff United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), has filed a complaint in this action ("Complaint") concurrently with this Consent Decree, alleging that Defendant TotalEnergies Marketing Puerto Rico Corp., formerly known as Total Petroleum Puerto Rico Corporation, ("Total") violated Sections 111, 112 and 303 of the Clean Air Act ("CAA"), 42 U.S.C. §§ 7411, 7412 and 7603, and its implementing regulations at Total's Guaynabo Bulk Fuel Terminal ("Facility").

WHEREAS, EPA's regulations found at 40 C.F.R. Part 63, Subpart BBBBBB (the "National Emission Standards for Hazardous Air Pollutants for Source Category: Gasoline Distribution Bulk Terminals, Bulk Plants, and Pipeline Facilities") and 40 C.F.R. Part 60, Subpart Kb ("Standards of Performance for Volatile Organic Liquid Storage Vessels (Including Petroleum Liquid Storage Vessels) for Which Construction, Reconstruction, or Modification Commenced After July 23, 1984"), require that owners and operators of bulk gasoline terminals operate their facilities in a manner consistent with safety and good air pollution control practices for minimizing emissions; to timely repair or remove tanks from service upon discovery of deficiencies in emissions control equipment; to operate gasoline truck loading rack and associated emissions control devices, including vapor recovery units ("VRUs"), below certain emission levels; and to adequately monitor those VRU emissions and record the required data and information. *See* 40 C.F.R. §§ 60.113b, 63.11085, 63.11088, 63.11092, and 63.11094.

WHEREAS, the United States alleges that Total: (i) operated and maintained some of its bulk gasoline storage tanks in a manner that was not consistent with safety and good air pollution control practices for minimizing emissions and that resulted in continued operation of gasoline storage tanks in need of repairs; (ii) operated its gasoline truck loading rack, VRU, and monitoring equipment in a manner that caused excess emissions of VOC; (iii) failed to timely

repair or take out of service Tank 31 after identifying liquid product on the tank's internal floating roof; and (iv) failed to meet certain monitoring and recordkeeping requirements.

WHEREAS, Defendant does not plan to return two tanks, Tank 13 and Tank 21, to gasoline service and instead intends to use these tanks to store diesel fuel and jet fuel, respectively.

WHEREAS, Defendant continued to operate Tank 14 following interim measures negotiated by the parties until March 4, 2021, and thereafter removed Tank 14 from gasoline service to replace the tank's internal floating roof.

WHEREAS, Defendant has replaced or intends to replace the internal floating roof of all its gasoline storage tanks that will continue to store gasoline with Full-Contact IFRs.

WHEREAS, after Tanks 31 and 32 began operation in 2019, liquid product was found on the tank's internal floating roof during an inspection conducted by the Defendant.

WHEREAS, Total took Tank 31 out of gasoline service on December 31, 2020, and Total subsequently removed all gasoline vapors from the tank and brought the Tank 31 back into service in March 2021 after the installation of a new Full-Contact IFR.

WHEREAS, Defendant has performed recent maintenance and replacement work on its gasoline truck loading rack VRU and plans to install a new continuous emissions monitoring system (CEMS) for total organic compounds (TOC) and a programmable logic controller (PLC) for the truck loading rack and VRU system. This work included the replacement of multiple valves and actuators, the installation of a new heat exchanger unit, and performing maintenance and VRU adjustments subsequent to these replacements.

WHEREAS, the United States seeks civil penalties and injunctive relief for Total's alleged failures to comply with the Act and its regulations.

WHEREAS, Total does not admit any liability to the United States arising out of the transactions or occurrences alleged in the Complaint. The United States and Total (collectively referred to hereinafter as the "Parties") agree that settlement without further litigation and without the admission or adjudication of any issue of fact or law is the most appropriate means of resolving this action with respect to Total.

WHEREAS, the Parties recognize, and the Court by entering this Consent Decree finds, that this Decree has been negotiated by the Parties in good faith and will avoid litigation among the Parties, and that this Decree is fair, reasonable, and consistent with the goals of the statute, in this instance, the CAA.

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## II.    JURISDICTION AND VENUE

1.    This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Sections 113 of the CAA, 42 U.S.C. § 7413, and over the Parties. Venue lies in this judicial district pursuant to 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b) and (c), and 1395(a), because Total conducts business in this judicial district and because the violations alleged in the Complaint occurred in this judicial district.  For purposes of this Consent Decree, or any action to enforce this Decree, Total consents to the Court's jurisdiction over this Decree and any such action, and over Defendants, and consents to venue in this judicial district.

2.    For purposes of this Decree, Total agrees that the Complaint states claims upon which relief may be granted pursuant to Sections 113(a) and (b) of the CAA, 42 U.S.C. § 7413(a) and (b).

3.      The United States has given notice of commencement of this action to the Commonwealth of Puerto Rico ("Commonwealth").

### III.    APPLICABILITY

4.      The obligations of this Consent Decree apply to and are binding upon the United States and upon Total and any successors, assigns, or other entities or persons otherwise bound by law.

5.      No transfer of ownership or operation of the Facility, or any portion thereof, whether in compliance with the procedures of this Paragraph or otherwise, relieves Total of its obligation to ensure that the terms of the Consent Decree are implemented.  At least 30 days prior to such transfer, Total shall provide a copy of this Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to EPA and the United States Department of Justice ("DOJ") in accordance with Section XI (Notices).  Any attempt to transfer ownership or operation of the Facility without complying with this Paragraph constitutes a violation of this Decree.

6.      Total shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Decree, as well as a summary of the applicable requirements of this Decree to all employees and agents whose duties include work required under this Decree and to any contractor retained to perform work required under this Decree.

7.      In any action to enforce this Consent Decree, Total shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Decree.

4

## IV.    OBJECTIVES

8.    The express purpose of the Parties entering into this Consent Decree is for Total

to fulfill the requirements of the CAA and the regulations promulgated thereunder. All plans,

measures, reports, construction, maintenance, operational requirements and other obligations

under this Decree shall have the objective of ensuring that Total achieves and maintains for the

full term of this Decree full compliance with the CAA and its objectives.

## V.    DEFINITIONS

9.    Unless otherwise defined herein, the terms used in this Consent Decree will have

the meaning given to those terms in the CAA, 42 U.S.C. § 7401 *et seq.*, and the regulations

promulgated thereunder. The following terms, as used in this Decree and for purposes of this

Decree only, will be defined as follows:

"30-minute Average LEL Measurement" means the average of valid data collected using a LEL meter for 30 minutes, adjusted using the appropriate correction factor. LEL Measurement conducted during tank refilling periods shall not be considered as valid.

"CAA" means the Clean Air Act, as amended, 42 U.S.C. §7401 *et seq*.

"Commonwealth" means the Commonwealth of Puerto Rico.

"Complaint" means the complaint filed by the United States in this action concurrently with this Consent Decree.

"Consent Decree" or "Decree" means this Decree, and any modifications made hereto.

"Correction Factor" means the numeric value provided by the LEL meter's manufacturer that is used to convert the LEL measured by the LEL meter based on the calibration gas (in most cases methane), to the actual LEL of the gas vapors being measured (under this Decree, gasoline vapors).

"Date of Lodging" means the date on which the United States lodges the Decree with the United States District Court for the District of Puerto Rico.

"Day" or "day" means a calendar day. In computing any period of time under this Decree, where the last day would fall on a Saturday, Sunday, or federal or commonwealth holiday, the period shall run until the close of business of the next working day.

"DNER" means the Puerto Rico Department of Natural and Environmental Resources.

"DOJ" means the United States Department of Justice.

"Effective Date" means the date on which the Court's approval of this Decree is recorded in the Court's docket.

"EPA" means the United States Environmental Protection Agency.

"Facility" means Total's Guaynabo Bulk Terminal located on the southern shore of San Juan Harbor at Km. 0.8 on State Road 28 between Roads 2 and 165 in the municipality of Guaynabo, Puerto Rico. The location of the Facility has the following coordinates: 18° 25' 14.92" N and 66° 06' 19.69" W.

"Full-Contact IFR" shall mean an IFR that floats directly on the liquid surface.

"Interest" means interest at the rate specified in 28 U.S.C. § 1961. Unless otherwise stated, the applicable rate of interest shall be the rate in effect at the time the interest accrues.

"Internal Floating Roof" or "IFR" means a roof internal to a bulk storage tank where the roof's floating deck rises and falls with the liquid level and rests either on the liquid or, if on pontoons, then slightly above the liquid and that functions as an emissions control device to prevent the accumulation of vapors in the tank's Vapor Space.

"IFR Tank" means a storage tank that has both a permanent fixed roof and an IFR.

"High VOC Product" or "HVOCP" means any petroleum product with a true vapor pressure greater than 0.5 pounds per square inch atmospheric pressure ("psia"), such as gasoline.

"Lower Explosive Limit" or "LEL" means the minimum concentration of vapor in air below which propagation of a flame does not occur in the presence of an ignition source.

"LEL Measurement" means LEL concentration measured by a Portable LEL Meter or the measurement of such LEL concentration in accordance with the procedures for such measurement under this Consent Decree.

"MPH" means miles per hour.

"Operating Parameter Value" or "OPV" means a value for an operating or emission parameter of the vapor processing system (e.g., TOC concentrations) which, if maintained continuously by itself or in combination with one or more other operating parameter values, determines that an owner or operator has complied with the applicable emission standard.

"Paragraph" means a portion of this Decree identified by an Arabic numeral or lowercase letter.

"Parties" means the United States and Total.

"Plaintiff" means the United States of America.

"Portable LEL Meter" means a hand-held LEL meter used to measure the concentration of explosive/flammable gases and provide results in terms of the percentage of 100% of the LEL of the calibration reference gas.

"PRFD" means the Puerto Rico Fire Department.

"Section" means a portion of this Decree identified by a Roman numeral.

"Total" means Defendant TotalEnergies Marketing Puerto Rico Corp., f/k/a Total Petroleum Puerto Rico Corporation.

"Total Organic Compounds" or "TOC" shall mean the total hydrocarbon concentration in an airstream, with the results expressed in terms of the calibration standard (e.g., ppmv as propane)

"United States" means the United States of America, acting on behalf of EPA.

"Vapor Space" means the portion of the storage tank between the tank's fixed roof and the IFR.

"Ventilation System" means the use of electrical blowers to create an increased cross-draft in the Vapor Space of a storage tank that increases the flow of ambient air into the tank's Vapor Space and dilute the concentrations of hydrocarbons within the tank's Vapor Space.

## VI.    CIVIL PENALTY

10.    Within 30 days after the Effective Date, Total shall pay the sum of $500,000 as a civil penalty. If the payment is late, Total shall pay, in addition to the stipulated penalties due under Section IX, an additional sum for interest accruing from the date on which the Consent Decree is lodged with the Court until the date of payment, at the rate specified in 28 U.S.C. § 1961 as of the date of lodging.

11.    The Financial Litigation Unit ("FLU") of the United States Attorney's Office for the District of Puerto Rico shall provide to Total, in accordance with Paragraph 68, instructions for making this payment, including a Consolidated Debt Collection System ("CDCS") reference number. Total shall make such payment at https://www.pay.gov in accordance with the FLU's

instructions, including references to the CDCS Number. Total shall send notices of this payment to EPA and DOJ in accordance with Paragraph 68.

12.    Total shall not deduct any penalties paid under this Consent Decree pursuant to this Section or Section IX (Stipulated Penalties) in calculating its federal income tax.

## VII.    COMPLIANCE MEASURES

13.    <u>New IFRs</u>. Total may not store any HVOCP in any of Tanks 13, 14, 15, 19, 21, or 31, after March 4, 2020 unless it first replaces or has replaced the affected tank with a new IFR and properly restarts the tank in accordance with Paragraph 14. All tank and/or IFR repairs and/or replacements must satisfy the requirements of 40 C.F.R. § 60.112b and must be implemented in accordance with any local, commonwealth, and/or federal requirements.

14.    <u>Tank Restart</u>. When returning to HVOCP service Tank 14, 15, 19, 31, or 32, or any other tank in which HVOCP is stored, Total shall comply with the following startup procedures.  For each tank, Total shall do each of the following:

a.    Fill the tank in accordance with local, commonwealth, and federal regulations;

b.    Receive product by transfer from another tank, tank truck, or from a vessel;

c.    Conduct visual inspection of the IFR, through roof hatches on the fixed roof, to confirm that the IFR travels freely to its full height. Total shall check the peripheral seal for proper operation throughout the entire travel of the IFR;

d.    Within 48 hours after the completion of the initial filling of the tank, conduct a LEL Measurement at least once per day for three consecutive days;

e.    Conduct at least one additional LEL Measurement when product level within the tank is below half of its volume;

f.      If any 30-minute Average LEL Measurements are above 25% of the LEL, Total shall take further LEL Measurements on each of the next three days with wind speeds of five MPH or less; and

g.      If the 30-minute Average LEL Measurement for any of the follow-up LEL Measurements pursuant to Paragraph 14.f are greater than 25% of the LEL, Total shall take additional corrective action as specified in Paragraph 16 (Corrective Action).

15.     Quarterly Monitoring. For each IFR tank with a storage capacity of greater than 30,000 barrels and storing HVOCP, Total shall perform LEL Measurements once each calendar quarter for three years. Such quarterly monitoring shall begin: (a) for Tanks 14, 15, 19, 31, and 32, after startup procedures are completed; and (b) for any other tanks with a storage capacity of greater than 30,000 barrels and storing HVOCP, during the first full calendar quarter after the Effective Date, or the date of startup of the tank, whichever is later.

a.      If the quarterly 30-minute Average LEL Measurement for a given IFR tank is less than or equal to 25% of the LEL, no further action is required until the next scheduled LEL Measurement. If four consecutive quarterly 30-minute Average LEL Measurements for a given IFR Tank are at or below 25% of the LEL, Total may reduce the monitoring for that IFR Tank to semi-annual LEL Measurements, but in no case shall any two LEL Measurements be made more than seven months apart.

b.      If the 30-minute Average LEL Measurement for a given IFR tank is greater than 25% of the LEL, Total shall take follow-up LEL Measurements on each of the next three days during which wind speeds are five MPH or less.

c.      If a 30-minute Average LEL Measurement for any of the follow-up LEL Measurements for any IFR Tank is greater than 25% of the LEL, Total shall take the corrective

9

actions specified in Paragraph 16 (Corrective Action).

16.    <u>Corrective Action</u>. If corrective action is required under paragraphs 14 or 15 for any IFR Tank with a storage capacity of greater than 30,000 barrels that is storing HVOCP:

a.    Within 45 days of triggering corrective action, Total shall make any repairs or operational adjustments to the tank to correct any failures discovered, or shall remove the tank from service. If more time is necessary to make the required repairs, and the tank cannot be taken out of service within 45 days, Total may request approval from EPA for up to two extensions of 30 days each.

b.    If the required repairs were performed without emptying the tank, Total shall, within five days of completion of required repairs on any IFR Tank, complete LEL Measurements to confirm that the tank is in good working order.

c.    If required repairs included taking the tank out of service, upon completion of required repairs on any tank, Total shall follow the Tank Restart procedures under Paragraph 14 for returning to service.

d.    If all of the 30-minute Average LEL Measurements of the re-tested tank are less than or equal to 25% of the LEL, no further action is required until the next scheduled quarterly LEL Measurement.

e.    If any of the 30-minute Average LEL Measurements of the re-tested tank are greater than 25% of the LEL, Total shall take follow-up LEL Measurements for each of the next three days during which wind speeds are five MPH or less.

f.    If the 30-minute Average LEL Measurement for any of the follow-up LEL Measurements for any re-tested tank is greater than 25% of the LEL, Total shall take corrective action as specified in Paragraph 16.a so as to achieve measurements equal to or less than 25%

10

LEL. Except for purposes of testing the effectiveness of the corrective action required by this subparagraph, Total may not store any HVOC in the tank until such corrective action is complete.

g. Following Total's second attempt for corrective action as described in subparagraph 16.f above, if the 30-minute Average LEL Measurement for any subsequent follow-up LEL Measurements for any re-tested tank is greater than 25% of the LEL, Total shall submit for approval a plan for further corrective action pursuant to paragraphs 20-23. Until EPA approves a corrective action plan, Total shall place the tank into low-VOC service or remove the tank from service, or take alternative temporary steps to assure that the health of persons will be protected from imminent endangerment if approved under paragraph 19 (Deviation from Requirements). "Low-VOC service" means the storage, handling or processing of liquid material with true vapor pressures of less than 0.5 psia.

17. <u>Procedures for LEL Measurements</u>. Total shall conduct all LEL Measurements required under this Decree in accordance with the requirements of this Paragraph:

a. All LEL Measurements must be taken with a Portable LEL Meter with data logging capability.

b. All LEL Measurements must be taken by sampling the vapor space within three feet of the top of the IFR.

c. Total shall calibrate the Portable LEL meter with methane prior to each tank's LEL Measurement, and the date and time shall be set to local time. If extended sample collection tubing for the Portable LEL meter will be used, Total shall ensure that the Portable LEL Meter is capable of being successfully calibrated with the length of sample tubing to be used.

11

d.    Total shall conduct LEL Measurements only when the wind speed is at or less than five MPH.  In circumstances where meeting this requirement is difficult due to the limited period of time within which Total must conduct the LEL Measurements, Total shall make best efforts to conduct LEL Measurements during the early morning hours and/or when wind speed is less than five MPH.

e.    Total shall conduct data logging of the LEL Measurements in intervals that are no longer than 15 seconds.  Total shall take measurements for 35 minutes, and must disregard the first five minutes of data when calculating the 30-minute Average LEL Measurement.

f.    Total shall ensure that, except for the motion caused by normal loading of tank trucks at the terminal, the IFR of an IFR Tank is not in motion during sampling.

g.    Total shall adjust all LEL Measurements using LEL Correction Factors specific to the LEL meter that was used, the calibration gas used, and the liquid being stored in the IFR Tank (e.g., gasoline).

18.    <u>Vapor Recovery Unit Requirements</u>.

a.    Total shall monitor the performance of the VRU and make adjustments and repairs to the VRU as appropriate to optimize VRU performance according to manufacturer's recommendations, and in a manner consistent with safety and good air pollution control practice for minimizing emissions, as outlined in 40 C.F.R. § 63.11085(a).

b.    Starting on July 1, 2022 or after the completion of the installation of the new continuous emissions monitoring system (CEMS) for total organic compounds (TOC) and a programmable logic controller (PLC) for the truck loading rack and VRU system, whichever comes earlier, and continuing until such time that a new Operating Parameter Value (OPV) is

established under Paragraph 18.i, Total shall ensure that emissions of Total Organic Compounds (measured as propane) from the VRU do not exceed 19,000 ppm (or 1.90%) by volume of propane based on a six-hour rolling average. The six-hour rolling average is to be calculated including only periods during those six hours when gasoline is loaded.

        c.      By no later than June 30, 2022 or 30 days after the completion of the installation of the new CEMS for TOC and a PLC for the truck loading rack and VRU system, whichever comes earlier, Total shall install, calibrate, certify, operate, and maintain, according to the manufacturer's specifications, a new CEMS to continuously measure TOC and an associated PLC for the VRU.

        d.      On January 28, 2021, Total submitted a site-specific test plan for EPA review and notified EPA in writing of its intention to conduct a performance test of the VRU to verify compliance with all applicable emission limits and to establish a new OPV for the VRU based on the test results, as outlined in 40 CFR Part 63, Subpart BBBBBB.

        e.      On January 28, 2021, Total submitted a site-specific CEMS performance evaluation plan for EPA review and notified EPA in writing of its intention to conduct the CEMS performance evaluation.

        f.      By no later than June 30, 2022 or 30 days after the completion of the installation of the new CEMS for TOC and a PLC for the truck loading rack and VRU system, whichever comes earlier, Total shall conduct a performance test of the VRU, in accordance with the test plan submitted to EPA, to verify compliance with all applicable emission limits for the VRU and to establish a new OPV for the VRU, as outlined in 40 C.F.R. Part 63, Subpart BBBBBB.

        g.      By no later than June 30, 2022 or 30 days after the completion of the

installation of the new CEMS for TOC and a PLC for the truck loading rack and VRU system, whichever comes earlier, Total shall conduct a performance evaluation of the CEMS, in accordance with the test plan submitted to EPA, to verify data quality of the CEMS, as outlined in 40 C.F.R. § 63.8(e).

   h. By no later than 60 days after conducting the performance test for the VRU, Total shall submit a notification of compliance status ("NOCS") to EPA in accordance with 40 C.F.R. § 63.9(h).

   i. As part of the NOCS, Total shall determine and submit for EPA approval, a new OPV based on the data monitored during the new performance test, supplemented by engineering assessments and the manufacturer's recommendations. The NOCS must include the rationale for the selected OPV, monitoring frequency, and averaging time, including data and calculations used to develop the value and a description of why the value, monitoring frequency, and averaging time assures continuous compliance with all applicable emission limits for the VRU and takes into account only periods when gasoline was being loaded. Total shall calculate its new OPV based on the below equation from 40 C.F.R. § 60.503(c)(3):

$$E = K \sum_{i=1}^{n} (V_{esi} C_{ei})/(L 10^6)$$

where the parameters:

C = the value of the new OPV (ppm),
E = 35 mg TOC/L gasoline loaded (the most stringent applicable emission standard for the VRU),
V = the total volume of exhaust air from the VRU measured by the entire performance test (scm),
L = the total volume of gasoline loaded (liters), and
K = density of calibration gas, $1.83 \times 10^6$ for propane, mg/scm

unless an alternative measurement has been approved by EPA.

   j. In its calculation of the OPV, Total shall provide an appropriate margin of

compliance to account for variation in the operational and ambient conditions and ensure continuous compliance with all applicable emission standards.

        k.     Total shall begin complying with the new OPV upon EPA's approval thereof, and as of the date of EPA's approval.

      19.    <u>Deviations from Requirements</u>. Total may request in writing that EPA approve a deviation from any of the compliance requirements of Paragraph 14 of this Agreement. Total's request must include the basis for such deviation or change. EPA may take into consideration the opinions of PRFD and DNER in reviewing Total's request. EPA may, in its sole discretion, approve such request in writing. Upon EPA's approval such deviation is binding under this Decree.

      20.    <u>Approval of Deliverables</u>. After review of any plan, report, or other item that is required to be submitted for EPA approval pursuant to this Consent Decree, EPA may in writing: (a) approve the submission; (b) approve the submission with specified conditions; (c) approve part of the submission and disapprove the remainder; or (d) disapprove the submission.

      21.    If the submission is approved pursuant to Paragraph 20, Total shall take all actions required by the plan, report, or other document, in accordance with the schedules and requirements of the plan, report, or other document, as approved. If the submission is conditionally approved or approved only in part pursuant to Paragraph 20.b or 20.c, Total shall take all actions required by the approved plan, report, or other item that EPA determines are technically severable from any disapproved portions, subject to Total's right to dispute only the specified conditions or the disapproved portions under Section XI (Dispute Resolution).

      22.    If the submission is disapproved in whole or in part pursuant to Paragraph 20.c or 20.d, Total shall, within 30 days or such other time as the Parties agree to in writing, correct all

deficiencies and resubmit the plan, report, or other item, or disapproved portion thereof, for approval, in accordance with the preceding Paragraphs. If the resubmission is approved in whole or in part, Total shall proceed in accordance with the preceding Paragraph.

23.    If a resubmitted plan, report, or other item, or portion thereof, is disapproved in whole or in part pursuant to Paragraph 23, EPA may again require Total to correct any deficiencies, in accordance with the preceding Paragraphs, or may itself correct any deficiencies subject to Total's right to invoke Dispute Resolution and the right of EPA to seek stipulated penalties.

24.    Any stipulated penalties applicable to the original submission under Paragraph 23, as provided in Section IX (Stipulated Penalties), shall accrue during the 30-day period or other specified period, but shall not be payable unless the resubmission is untimely or is disapproved in whole or in part; provided that, if the original submission was so deficient as to constitute a material breach of Total's obligations under this Decree, the stipulated penalties applicable to the original submission shall be due and payable notwithstanding any subsequent resubmission.

### VIII. REPORTING REQUIREMENTS

25.    <u>Reporting Regarding Tank Inspections and Repairs</u>. For any IFR tank with a storage capacity of greater than 30,000 barrels and storing HVOCP, for any tank or IFR inspection (including in-service and out-of-service inspections) conducted pursuant to this Consent Decree or either 40 C.F.R. Part 60 or 40 C.F.R. Part 63, or for any tank or IFR inspection conducted for other purposes when there are findings of deficiencies with the IFR or the tank that affect the performance of the IFR, Total shall:

a.    when the inspection was conducted by a Contractor, submit tank inspection reports within 15 days of when Total receives the complete inspection report from the Contractor;

16

        b.     when the inspection was conducted by Total personnel, submit tank inspection reports within 15 days of when Total conducts the inspection; and

        c.     when tank or IFR repairs are made as a result of any of the above inspections, submit the corresponding documentation for the repairs within 30 days of when any subsequent repairs are made.

26.    <u>Reporting Regarding Returning Tanks to Service</u>. For each storage tank with an IFR and a storage capacity of greater than 30,000 barrels in which Total intends to store HVOCP, Total shall notify EPA, DNER, and PRFD at least seven days prior to returning a tank to service and notify EPA within seven days after a tank is put back into service that this has occurred.

27.    For any tank that has been returned to service:

        a.     Total shall notify EPA, DNER, and PRFD at least seven days prior to any planned LEL Measurements to be conducted to comply with this Consent Decree;

        b.     Total shall provide EPA, DNER, and PRFD with the results of all LEL Measurements within seven days of completion of the measurements;

        c.     Total shall provide EPA, DNER, and PRFD with the preliminary results of any LEL Measurements, or with any measurement of LEL, within 24 hours when any single reading during the measurements is above 65% or a 30-minute Average LEL Measurement is above 25% of the LEL; and

        d.     Total shall provide EPA, DNER and PRFD with documentation of any resulting required repairs that are triggered under this Decree as described in Section VII (Compliance Measures) within 30 days of completion.

28.    <u>Quarterly Progress Reports</u>. Commencing as of the Date of Lodging, Total shall submit to EPA written quarterly status reports ("Quarterly Progress Reports"): by January 28 covering the October 1 to December 31 quarterly period; by April 28 covering the January 1 to March 31 quarterly period; by July 28 covering the April 1 to June 30 quarterly period; and by October 28 covering the July 1 to September 30 quarterly period, until this Decree is terminated. The first Quarterly Progress Report may cover a period of less than three months depending on the Date of Lodging.  Upon request of Total, the United States may, in the unreviewable exercise of its discretion, reduce the filing frequency of the Quarterly Progress Reports, and reduce the elements required to be included in the report. Each Quarterly Progress Report must include:

a.    a description of the current status and progress of Total's actions taken to comply with Section VII (Compliance Measures);

b.    descriptions of the specific activities undertaken by Total relating to the completion of work required under the compliance schedules specified in this Decree, in a manner meeting the requirements of this Decree, including but not limited to any completed progress milestones and expected completion dates for any of the tank IFR replacements, installation of the new CEMS and PLC for the VRU, performance testing of the VRU and evaluation of the new VRU CEMS, and/or any other actions identified in Section VII;

c.    descriptions of any impediments Total encountered in meeting the compliance schedules under this Decree, the steps that Total has taken to overcome such impediments, and the steps that Total plans to take to overcome such impediments, including the anticipated dates by which such steps will be taken;

d.    a description of the requirements of this Decree subject to stipulated penalties which were not complied with, the dates of such non-compliance and the computations

18

made in determining the amount of stipulated penalties due;

        e.     any changes in Total's personnel, as well as any change in the contractors hired to comply with the requirements of this Decree;

        f.     VRU compliance data based on the applicable OPV for the VRU, including the time intervals during which loadings of gasoline cargo tanks have occurred. The VRU compliance data shall include all VRU CEMS data for periods during gasoline loading for each calendar quarter reduced to time periods consistent with the approved OPV averaging time (*e.g.*, rolling 6-hour averages and periods during gasoline loading). With each quarterly report, Total shall also include a summary describing the CEMS in use during the period, the upper measurement range of the CEMS, and a summary of any 30-second readings (or the shortest time interval used by the CEMS data logger in operation) that reached the upper measurement range of the CEMS; and

        g.     For each deliverable submitted to EPA during the reporting period, a reference to that deliverable and to the date of its submission, in lieu of another copy of that deliverable.

    29.    The reporting requirements in this Section do not relieve Total of the obligation to submit reports or information required under the CAA, the regulations promulgated thereunder, any CAA permit issued for the Guaynabo facility, or any other permit or local or federal law.

    30.    All reports and submissions required under this Consent Decree shall be in English and contain a certification signed by an authorized representative of Total. The certification shall read as follows:

> "I certify under penalty of perjury that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly

responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I have no personal knowledge that the information submitted is other than true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations."

## IX.    STIPULATED PENALTIES

31.    Total shall be liable for stipulated penalties to the United States for violations of this Consent Decree as specified below, unless excused under Section X (Force Majeure).  A violation includes failure to perform any obligation required by the terms of this Decree, including any work plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

32.    <u>Late Payment of Civil Penalty</u>.  If Total fails to pay the civil penalty required to be paid under Section VI (Civil Penalty) when due, Total shall pay a stipulated penalty of $1,000 per day for each day that the payment is late.

33.    The following stipulated penalties shall accrue per violation, per each day for each violation, of a requirement of this Consent Decree:

a.    For each failure to comply with Paragraph 13, $1,000.

b.    For each failure to comply with Paragraph 14, $250.

c.    For each failure to make a proper LEL Measurement or comply with the LEL Measurement frequency, $250;

d.    For each failure to comply with Paragraphs 16, $2,500;

e.    For each failure to comply with Paragraph 18.a,18.b or 18.k, $1,000;

f.    For each failure to comply with Paragraph 18.c, $250;

g.    For each failure to comply with Paragraphs 18.f or 18.g, $250;

h.    For each failure to comply with Paragraph 18.h, $250;

20

    i.       For each failure to comply with Paragraph 22, $250; and

    j.       For each failure to comply with a requirement of Section VIII, $250.

34.     Stipulated penalties under this Section shall begin to accrue on the day after performance is due or on the day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

35.     Total shall pay any stipulated penalty within 30 days of receiving the United States' written demand. Total shall pay the stipulated penalties owing to the United States at https://www.pay.gov using the link for "EPA Miscellaneous Payments Cincinnati Finance Center," including references to the DJ number listed in Paragraph 68, the case name, and the purpose of the payment. Total shall send a notice of this payment to DOJ and EPA, in accordance with Paragraph 68.

36.     The United States may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

37.     Stipulated penalties shall continue to accrue as provided in Paragraph 34, during any Dispute Resolution, but need not be paid until the following:

    a.       If the dispute is resolved by agreement of the Parties or by a decision of EPA that is not appealed to the Court, Total shall pay accrued penalties determined to be owing, together with interest, to the United States within 30 days of the effective date of the agreement or the receipt of EPA's decision or order.

    b.       If the dispute is appealed to the Court and the United States prevails in whole or in part, Total shall pay all accrued penalties determined by the Court to be owing, together with interest, within 60 days of receiving the Court's decision or order, except as

provided in Paragraph 37.c.

        c.     If any Party appeals the District Court's decision, Total shall pay all accrued penalties determined to be owing, together with interest, within 15 days of receiving the final appellate court decision.

        38.    <u>Obligations Prior to the Effective Date</u>.  Upon the Effective Date, the stipulated penalty provisions of this Consent Decree shall be retroactively enforceable with regard to any and all violations in Section VII (Compliance Measures) that have occurred between the Date of Lodging and the Effective Date, provided that stipulated penalties that may have accrued prior to the Effective Date may not be collected unless and until this Consent Decree is entered by the Court.

        39.    Total shall pay stipulated penalties owing to the United States in the manner set forth in, and with the confirmation notices required by, Section VI (Civil Penalty), except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

        40.    If Total fails to pay stipulated penalties according to the terms of this Consent Decree, Total shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due.  Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for Total's failure to pay any stipulated penalties.

        41.    The payment of penalties and interest, if any, shall not alter in any way Total's obligation to complete the performance of the requirements of this Consent Decree.

        42.    <u>Non-Exclusivity of Remedy</u>.  Stipulated penalties are not the United States' exclusive remedy for violations of this Consent Decree.  Subject to the provisions of Section XIII

(Effect of Settlement/Reservation of Rights), the United States expressly reserves the right to seek any other relief it deems appropriate for Total's violation of this Decree or applicable law, including but not limited to an action against Total for statutory penalties, additional injunctive relief, mitigation or offset measures, and/or contempt. However, the amount of any statutory penalty assessed for a violation of this Decree shall be reduced by an amount equal to the amount of any stipulated penalty assessed and paid pursuant to this Decree.

## X.    FORCE MAJEURE

43.    "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Total, of any entity controlled by Total, or of Total's contractors that delays or prevents the performance of any obligation under this Decree despite Total's best efforts to fulfill the obligation. The requirement that Total exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure and best efforts to address the effects of any such potential force majeure (a) as it is occurring, and (b) following the potential force majeure, such that the delay and any adverse effects of the delay are minimized. "Force Majeure" does not include Total's financial inability to perform any obligation under this Decree.

44.    If any event occurs or has occurred that may delay the performance of any obligation under this Decree, whether or not caused by a force majeure, Total shall provide notice to EPA by telephone or by email in accordance with Paragraph 68, within 72 hours of when Total first knew that the event might cause a delay. Within seven days thereafter, Total shall provide in writing to EPA an explanation and description of: the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Total's rationale for attributing such delay to a force majeure if it

intends to assert such a claim; and a statement as to whether, in the opinion of Total, such event may cause or contribute to an endangerment to public health, welfare or the environment. Total shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure. Failure to comply with the above requirements shall preclude Total from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Total shall be deemed to know of any circumstance of which Total, any entity controlled by Total, or Total's contractors knew or should have known.

45.     If EPA agrees that the delay or anticipated delay is attributable to a force majeure, the time for performance of the obligations under this Decree that are affected by the force majeure will be extended by EPA for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure shall not, of itself, extend the time for performance of any other obligation. EPA will notify Total in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure.

46.     If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure, EPA will notify Total in writing of its decision.

47.     If Total elects to invoke the dispute resolution procedures set forth in Section XI (Dispute Resolution), it shall do so no later than 15 days after receipt of EPA's notice. In any such proceeding, Total shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and

that Total complied with the requirements of Paragraphs 43 and 44. If Total carries this burden, the delay at issue shall be deemed not to be a violation by Total of the affected obligation of this Decree identified to EPA and the Court.

## XI.    DISPUTE RESOLUTION

48.    Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Decree. Total's failure to seek resolution of a dispute under this Section shall preclude Total from raising any such issue as a defense to an action by the United States to enforce any obligation of Total arising under this Decree.

49.    <u>Informal Dispute Resolution</u>. Any dispute subject to Dispute Resolution under this Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when Total sends the United States a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed 30 days from the date the dispute arises, unless that period is modified by written agreement. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 10 days after the conclusion of the informal negotiation period, Total invokes formal dispute resolution procedures as set forth below.

50.    <u>Formal Dispute Resolution</u>. Total shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States a written Statement of Position regarding the matter in dispute. The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Total's position and any supporting documentation relied upon by Total.

51.    The United States shall serve its Statement of Position within 45 days of receipt of Total's Statement of Position. The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States. The United States' Statement of Position shall be binding on Total, unless Total files a motion for judicial review of the dispute in accordance with the following Paragraph.

52.    Total may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XI (Notices), a motion requesting judicial resolution of the dispute. The motion must be filed within 20 days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph. The motion shall contain a written statement of Total's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Decree.

53.    The United States shall respond to Total's motion within the time period allowed by the Local Rules of this Court. Total may file a reply memorandum, to the extent permitted by the Local Rules.

54.    Standard of Review

a.    <u>Disputes Concerning Matters Accorded Record Review</u>. Except as otherwise provided in this Decree, in any dispute brought under Paragraph 50 (Formal Dispute Resolution) pertaining to: the adequacy or appropriateness of plans, procedures to implement plans, schedules or any other items requiring review and approval by EPA under this Decree; the adequacy of the performance of work undertaken pursuant to this Decree; and all other disputes that are accorded review on the administrative record under applicable principles of

administrative law, Total shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

b.    Other Disputes.  Except as otherwise provided in this Decree, in any other dispute brought under Paragraph 50 (Formal Dispute Resolution), Total shall bear the burden of demonstrating that its position complies with this Decree and would better further the objectives of the Decree.

55.    The invocation of Dispute Resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Total under this Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties with respect to the disputed matter shall continue to accrue from the first day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 50.  If Total does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section IX (Stipulated Penalties).

## XII.   RECORD RETENTION AND ACCESS

56.    The United States and its representatives, including attorneys, contractors, and consultants have the right of entry into the Facility at all reasonable times, upon presentation of credentials, to:

a.    monitor the progress of activities required under this Decree;

b.    verify any data or information submitted to the United States in accordance with the terms of this Decree;

c.    obtain samples and, upon request, splits of any samples taken by Total or its representatives, contractors, or consultants;

d.    obtain documentary evidence, including photographs and similar data; and

27

   e.  assess Total's compliance with this Decree.

  57.  Until five years after the termination of this Decree, Total shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to Total's performance of its obligations under this Decree, including: (a) all TOC emissions and tank LEL data logging output files; (b) Facility log books; (c) computerized or other written maintenance management system files in which routine Facility maintenance information is loaded or otherwise recorded including job orders for corrective or preventive maintenance for the Facility; and (d) inspection check lists or reports performed at the Facility, compiled daily, weekly, monthly, semi-annually, or annually, as applicable.  This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures.  At any time during this information-retention period, upon request by the United States, Total shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

  58.  At the conclusion of the information-retention period provided in the preceding Paragraph, Total shall notify the United States at least 90 days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States, Total shall deliver any such documents, records, or other information to EPA.  Total may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law.  If Total asserts such a privilege, it shall provide the following: (a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of

28

each author of the document, record, or information; (d) the name and title of each addressee and recipient; (e) a description of the subject of the document, record, or information; and (f) the privilege asserted by Total. However, no documents, records, or other information created or generated pursuant to the requirements of this Decree shall be withheld on grounds of privilege.

59.     Total may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2. As to any information that Total seeks to protect as CBI, Total shall follow the procedures set forth in 40 C.F.R. Part 2.

60.     This Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal laws, regulations, or permits, nor does it limit or affect any duty or obligation of Total to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XIII.  EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

61.     This Decree resolves the civil claims of the United States for the violations alleged in the Complaint filed in this action through the Date of Lodging.

62.     The United States reserves all legal and equitable remedies available to enforce the provisions of this Decree. This Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the CAA or implementing regulations, or under other federal laws, regulations, or permit conditions, except as expressly specified in the preceding Paragraph. The United States further reserves all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, Total's facilities, whether related to the violations addressed in this Decree or otherwise.

29

63.     In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, or other appropriate relief relating to the Facility or Total's violations, Total shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, *res judicata*, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 61.

64.     This Decree is not a permit, or a modification of any permit, under any federal, Commonwealth, or local laws or regulations.  Total is responsible for achieving and maintaining complete compliance with all applicable federal, Commonwealth, and local laws, regulations, and permits; and Total's compliance with this Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein.  The United States does not, by its consent to the entry of this Decree, warrant or aver in any manner that Total's compliance with any aspect of this Decree will result in compliance with provisions of the CAA, or with any other provisions of federal, Commonwealth, or local laws, regulations, or permits.

65.     This Decree does not limit or affect the rights of Total or of the United States against any third parties, not party to this Decree, nor does it limit the rights of third parties, not party to this Decree, against Total, except as otherwise provided by law.

66.     This Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Decree.

## XIV.  COSTS

67.     The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees)

incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Total.

## XV.  NOTICES

68.     Unless otherwise specified in this Decree, whenever notifications, submissions, or communications are required by this Decree, they shall be made in writing, in English, including the references below, and addressed and sent as follows:

| | |
|---|---|
| As to the United States Department of Justice: (email only) | eescasemanagement.enrd@usdoj.gov<br>Ref: DJ # 90-5-1-1-10983/1 |
| As to EPA:<br><br><br><br><br><br><br><br>And | Chief, Multimedia Permits and Compliance Branch<br>Caribbean Environmental Protection Division<br>Unites States Environmental Protection Agency, R2<br>City View Plaza II – Suite 7000<br>State Road # 165 Km. 1.2<br>Guaynabo, Puerto Rico 00968-8069<br>Tel: [TBD]<br>Ref: [TBD]<br><br>Chief, Air Branch<br>Office of Regional Counsel<br>United States Environmental Protection Agency, Region 2<br>290 Broadway, 16th Floor<br>New York, New York 10007 |
| As to Total:<br><br><br><br><br><br><br>And | Juan Jose Ragá Romero<br>General Manager<br>TotalEnergies Marketing Puerto Rico Corp.<br>PO Box 362916<br>San Juan, PR 00936-2916<br>Tel: (787) 749-8807<br>email: juan-jose.raga@tpprc.com<br><br>Denise Rodriguez, Esq.<br>Legal Manager<br>TotalEnergies Marketing Puerto Rico Corp.<br>P.O. Box 362916<br>San Juan, PR 00936-2916<br>Tel: (787) 749-7793<br>email: denise.rodriguez@tppcr.com |

| | Carlos Colón Franceschi |
|---|---|
| And | Toro Colón Mullet P.S.C. 416 Ponce de Leon Avenue Union Plaza, Suite 311 San Juan, Puerto Rico 00918 (787) 200-3090 email: ccf@tcm.law |

69.     Delivery shall be considered complete upon deposit of the material item at issue in the express mail, express courier service, or certified mail, or as otherwise specifically provided herein. In the case of emailed notices, there is a rebuttable presumption that such notices are received on the same day that they are sent.

70.     Any Party may, by written notice to the other Party, change its designated notice recipient or notice address provided above.

71.     Documents required to be submitted under the terms of this Decree may be submitted electronically if that option is provided for in the Decree, or upon later written agreement of the Parties.

## XVI.  RETENTION OF JURISDICTION

72.     The Court shall retain jurisdiction over this case until Termination of this Decree for the purpose of resolving disputes arising under this Decree under Section XI (Dispute Resolution), entering orders modifying this Decree under Section XV (Modification), or effectuating or enforcing compliance with this Decree.

## XVII. MODIFICATION

73.     The terms of this Decree may be modified only by a subsequent written agreement signed by all the Parties.  Where the modification constitutes a material change to this Decree, it is effective only upon approval by the Court.

74.     Any disputes concerning modification of this Decree shall be resolved pursuant to Section XI (Dispute Resolution), provided, however, that instead of the burden of proof provided

by Paragraph 54 (Dispute Resolution), the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XVIII.    TERMINATION

75.    After Total has (a) completed the requirements of Section VII, (b) has maintained satisfactory compliance with this Decree for a period of two years, and (c) has paid the civil penalty and any accrued stipulated penalties as required by this Decree, Total may serve upon the United States a request for termination, stating that Total has satisfied those requirements, together with all necessary supporting documentation.

76.    Following receipt by the United States of Total's request for termination, the Parties shall confer informally concerning the request and any disagreement that the Parties may have as to whether Total has satisfactorily complied with the requirements for termination of this Decree. If the United States agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

77.    If the United States does not agree that the Decree may be terminated, Total may invoke Dispute Resolution under Section XI. However, Total shall not seek Dispute Resolution of any dispute regarding termination until 60 days after submitting its request for termination.

## XIX.  PUBLIC PARTICIPATION

78.    This Consent Decree shall be lodged with the Court for a period of not less than 30 days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Decree disclose facts or considerations indicating that the Decree is inappropriate, improper, or inadequate. Total consents to entry of this Decree without further notice and agrees not to withdraw from or oppose entry of this Decree by the Court or to challenge any provision of the

Decree, unless the United States has notified Total in writing that it no longer supports entry of the Decree.

## XX.  SIGNATORIES/SERVICE

79.    Each undersigned representative of Total and the Deputy Section Chief of the Environmental Enforcement Section, Environment and Natural Resources Division, U.S. Department of Justice, certifies that he or she is fully authorized to enter into the terms and conditions of this Decree and to execute and legally bind the Party he or she represents to this document.

80.    This Decree may be signed in counterparts, and its validity shall not be challenged on that basis.  Total agrees to accept service of process by mail with respect to all matters arising under or relating to this Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons. Total need not file an answer to the complaint in this action unless or until the Court expressly declines to enter this Decree.

## XXI.  INTEGRATION

81.    This Consent Decree constitutes the entire agreement among the Parties regarding the subject matter of the Decree and supersedes all prior representations, agreements and understandings, whether oral or written, regarding the subject matter of the Decree.

## XXII. 26 U.S.C. SECTION 162(f)(2)(A)(ii) IDENTIFICATION

82.    For purposes of the identification requirement of Section 162(f)(2)(A)(ii) of the Internal Revenue Code, 26 U.S.C. § 162(f)(2)(A)(ii), performance of Section III (Applicability), Paragraph 6; Sections VII (Compliance Measures); Section VIII (Reporting Requirements), and Section XII (Record Retention), is restitution or required to come into compliance with law.

34

## XXIII.    FINAL JUDGMENT

83.    Upon approval and entry of this Consent Decree by the Court, this Decree shall constitute a final judgment of the Court as to the United States and Total.

Dated this 30th day of November, 2022.

**S/AIDA M. DELGADO-COLON**
**UNITED STATES DISTRICT JUDGE**

Signature Page for Consent Decree in *U.S. v. TotalEnergies Marketing Puerto Rico Corp.*

**FOR THE UNITED STATES OF AMERICA:**

ELLEN M. MAHAN
Deputy Chief
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section

MARK GALLAGHER

Digitally signed by MARK GALLAGHER
Date: 2022.09.19 07:22:20 -04'00'

September 19, 2022
Dated

MARK GALLAGHER, Bar No. G03317
Senior Lawyer
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
Washington, DC  20044-7611


W. STEPHEN MULDROW
United States Attorney
District of Puerto Rico

FIDEL SEVILLANO
Chief, Civil Division
United States Attorney's Office
District of Puerto Rico
Torre Chardon, Suite 1201
350 Carlos Chardon Avenue
San Juan, Puerto Rico 00918

36

Signature Page for Consent Decree in *U.S. v. TotalEnergies Marketing Puerto Rico Corp.*

FOR THE U.S. ENVIRONMENTAL
PROTECTION AGENCY:

PAUL SIMON
Acting Regional Counsel
U.S. Environmental Protection Agency, Region 2
290 Broadway, 17th Floor
New York, New York 10007-1866

SARA FROIKIN
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region 2
290 Broadway, 16th Floor
New York, New York 10007-1866

Signature Page for Consent Decree in *U.S. v. TotalEnergies Marketing Puerto Rico Corp.*

**FOR TOTALENERGIES MARKETING PUERTO RICO CORPORATION:**

6-30-2022
_____
Dated

DENISE RODRIGUEZ, ESQ.
Legal Manager
TotalEnergies Marketing Puerto Rico Corp.
P.O. Box 362916
San Juan, Puerto Rico 00936-2916
Tel. (787) 749-7793

38